

F I L E D
OCT - 2 2017
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 3:17-cr-129 |
| | ) | |
| v. | ) | 18 U.S.C. § 1341 |
| | ) | Mail Fraud |
| | ) | (Count 1) |
| RONALD TULLY, | ) | |
| | ) | Forfeiture Allegation |
| *Defendant.* | ) | (18 U.S.C. § 981(a)(1)(C)) |

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

## INTRODUCTORY ALLEGATIONS

At all times relevant to this Criminal Information:

1. Defendant RONALD TULLY was associated with the Council of Independent Tobacco Manufacturers of America ("CITMA"), a trade association registered in Virginia and comprised of a number of tobacco and tobacco product businesses. CITMA was formed in 2003 for the purpose of representing the interests of those independent manufacturers through lobbying the federal and state legislatures. CITMA maintains its principal office in Richmond, Virginia.

2. CITMA maintained a bank account at Wells Fargo for the purpose of conducting CITMA's business. TULLY was the signatory on this Wells Fargo account, and maintained physical possession and control of the CITMA checkbook. TULLY also received the account statements for CITMA's Wells Fargo account.

3. CITMA's operating costs were funded by membership dues paid annually by

CITMA's member companies. CITMA's member companies mailed their dues checks to the personal residence of one of CITMA's co-founders, K.A., located in Mechanicsville, Virginia, within the Eastern District of Virginia.

4. K.A. would thereafter deposit those membership dues into CITMA's Wells Fargo bank account, and notify TULLY that the funds had been deposited into CITMA's account.

5. TULLY, while a co-founder of CITMA and one of the organization's two primary operatives, was never either an employee or paid consultant of CITMA. Instead, TULLY was paid for the time he spent working on CITMA's behalf, and reimbursed for the expenses he incurred while doing so, by the National Tobacco Company, one of CITMA's member businesses and TULLY's longtime employer. TULLY was not entitled to any payment or reimbursement from CITMA.

6. CITMA's only paid employee was K.A. CITMA paid K.A. a regular consulting fee and reimbursed K.A. for his CITMA-related expenses.

7. As the holder of CITMA's checkbook, TULLY was responsible for writing checks to cover CITMA's expenses, which included K.A.'s consulting fee and expenses.

### COUNT 1
### Mail Fraud

A. **Scheme & Artifice to Defraud**

8. The "Introductory Allegations" above are incorporated by reference as if fully set forth here.

9. Beginning in or around March 2009, and continuing to in or around January 2016, in the Eastern District of Virginia and elsewhere, and within the jurisdiction of the Court, the defendant RONALD TULLY did knowingly, unlawfully, and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud CITMA of money, by means of materially

false and fraudulent pretenses and promises.

10. The scheme and artifice to defraud operated in substance as follows:

  a. TULLY used his position as the holder of the CITMA checkbook to write checks drawn on the CITMA account which he made payable to himself. After TULLY created a consulting company named TNV Ventures in August 2015, TULLY also wrote checks drawn on the CITMA account and made payable to TNV Ventures.

  b. When presenting those checks to Wells Fargo for payment, TULLY described the purpose of the checks – by way of description on the memorandum line of each check – as constituting reimbursement for CITMA-related travel expenses and CITMA-related meeting expenses.

  c. In fact, TULLY had either not incurred any such expense, or if he had, knew that he had been or would be reimbursed by his employer, NTC, for the same.

  d. TULLY's position as the checkbook holder for the CITMA account required him to draft legitimate checks on the CITMA account in order to pay CITMA's operating expenses. TULLY often used the mails to send these CITMA checks to CITMA's various creditors.

  e. TULLY took the proceeds of the CITMA checks that he had drafted and made payable to himself and deposited those funds into bank accounts that TULLY controlled. TULLY thereafter spent those CITMA funds on personal expenses.

**B. Mail Fraud**

11. To advance, further, and carry out the above-described scheme and artifice to defraud, defendant RONALD TULLY knowingly caused to be delivered by mail or any private

3

or commercial interstate carrier mailings containing CITMA checks at the place which the mailing was directed to be delivered by the individual to whom the mailing was addressed.

12. Specifically, on or about July 22, 2014, for the purpose of advancing, furthering, or carrying out the above-described scheme and artifice to defraud, TULLY knowingly caused to be delivered, by mail or a private and commercial interstate carrier, the following matter: A mailing containing a check written by TULLY and drawn on CITMA's Wells Fargo bank account, addressed to the Mechanicsville, Virginia home address of K.A., who had directed that TULLY mail to K.A. the payment that K.A. was due from CITMA for services rendered and expenses that K.A. had incurred on CITMA's behalf. By making such required payments to K.A., TULLY was able to project the appearance that TULLY was using his control of the CITMA account for only authorized and legitimate ends, limiting the likelihood that there would be any investigation into TULLY's management of the CITMA account that would disrupt TULLY's ability to continue to draft fraudulent checks on the CITMA account.

(All in violation of Title 18, United States Code, Section 1341.)

## Forfeiture Allegation

Pursuant to Federal Rule of Criminal Procedure 32.2, the defendant is hereby notified that if convicted of the offense charged in this Criminal Information, he shall forfeit any property, real or personal, which constitutes or is derived from any proceeds traceable to the offense.

Property subject to forfeiture includes, but is not limited to, the following:

**The sum of at least $833,599.93, representing the proceeds the defendant obtained as a result of the offense of conviction, and an amount for which the defendant shall be solely liable.**

If property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461; and Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461.)

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____
Thomas A. Garnett
Assistant United States Attorney