**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:17CR129-MHL |
| | ) | |
| RONALD TULLY, | ) | |
| | ) | |
| *Defendant*. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Dana J. Boente, United States Attorney, and Thomas A. Garnett, Assistant United States Attorney, hereby submits its position with respect to sentencing for defendant Ronald Tully. The United States has reviewed the Presentence Investigation Report (PSR) and does not dispute any of the facts or factors set out therein. Based on the factors set out in 18 U.S.C. § 3553(a), the United States recommends that the Court impose a sentence of 27 months.

**BACKGROUND**

The defendant was charged in a one-count Criminal Information that charged him with Mail Fraud, in violation of 18 U.S.C. § 1341, on October 2, 2017. (Dk. No. 1, PSR ¶ 1). The defendant plead guilty to the Criminal Information on October 11, 2017. (Dk. No. 11, PSR ¶ 3).

The defendant and another individual formed the Council of Independent Tobacco Manufacturers of America ("CITMA"), a trade organization, in 2003. CITMA was intended to represent the interests of independent tobacco manufacturers by coordinating lobbying efforts with the federal and state legislatures. CITMA was comprised of a number of these smaller tobacco

companies, which paid regular dues to belong to CTIMA and received the benefits provided by CITMA's lobbying apparatus and acumen.

The defendant worked for one of CITMA's member companies, the National Tobacco Company ("NTC"), which encouraged the defendant's CITMA-related efforts and considered those activities to be part of the defendant's employment responsibilities with NTC. The defendant played an integral part in CITMA's operations from the time of the organization's founding. He was one of CITMA's two primary operatives, and maintained signatory authority over the organization's bank account. The defendant also controlled CITMA's checkbook, and was responsible for settling CITMA's various expenses and operating costs. Once notified of these financial obligations, the defendant was responsible for drafting corresponding reimbursement or payment checks from the CITMA checkbook. As one of CITMA's two primary operatives, the defendant also committed a significant amount of time to working and traveling on CITMA's behalf. However, he was not paid for these activities or reimbursed for his travel expenses by CITMA, but instead by his actual employer, NTC. As such, the defendant was not entitled to any payment from CITMA.

Between approximately March 2009 and January 2016, the defendant used his control over CITMA's checkbook to write checks to both CITMA's creditors and himself. During that time frame, the defendant wrote dozens of checks to himself that purported to be reimbursement for expenses that he had incurred on CITMA's behalf. In each instance, however, the defendant had either already been reimbursed for the claimed expense by NTC, or had simply invented an expense that he had never incurred. All told, the defendant wrote $833,599.93 worth of fraudulent, self-addressed checks on CITMA's account before his scheme was uncovered.

**POSITION ON SENTENCING**

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing guidelines are "effectively advisory." *Id.* at 245. Nonetheless, the advisory nature of the Guidelines "does not mean that they are irrelevant to the imposition of a sentence." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006); *see also United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006). Indeed, the Guidelines "seek to embody the Section 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338, 350 (2007). Thus, a sentencing court "must consult [the] Guidelines and take them into account when sentencing" to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (internal quotation omitted); *United States v. Biheiri*, 356 F. Supp. 2d 589, 593 (E.D. Va. 2005).

A sentencing court should first calculate the range prescribed by the sentencing guidelines after making the appropriate findings of fact. *See United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Following that calculation, a sentencing court must then "consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *Id.*

The PSR correctly calculates a total offense level of 18, a Criminal History Category of I, and a guidelines range of 27 – 33 months' imprisonment.[1] Based on the Section 3553(a) factors, the United States recommends a guideline sentence of 27 months.

---

[1] This offense level includes the additional 1-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b). The United States moves for the 1-point reduction by separate filing.

I. **Nature and Circumstances of the Offense**

For nearly seven years, the defendant repeatedly defrauded an organization that he had helped to form. From March 2009 to January 2016, he used his control of CITMA's checkbook to write dozens of checks to himself that purported to be reimbursement for various CITMA-related business and travel expenses. The defendant knew he was not entitled to any of CITMA's funds for those claimed expenses – either because he had already been paid for those expenses by his employer, NTC, or because the conferences or travel costs were themselves complete fictions.

There was no apparent critical financial need underlying the defendant's long-running fraud scheme. At the time that the defendant began his fraud scheme, he was a well-paid, senior employee of one of CITMA's member companies. When he left that company in 2014, he promptly opened his own consulting company; it was successful enough to double his already-sizeable annual income. The defendant's fraud eventually so depleted CITMA's account that the organization failed to pay its bills, triggering a belated review of the defendant's (mis)management of CITMA's financial obligations. By the time he was discovered, the defendant had written more than 100 fraudulent checks to either himself or his consulting company, and embezzled more than $800,000 from the trade association.

The defendant's offense conduct warrants a sentence within the advisory guideline range.

II. **History and Characteristics of Defendant**

The defendant was born in 1960 in Edinburgh, United Kingdom, where he was raised by supportive parents who ensured the defendant's emotional and physical needs were always met. PSR ¶¶ 33-35. The defendant entered the United States permanently in 2001, and is a naturalized United States citizen. PSR ¶¶ 40, 42. The defendant is married, and has three adult children. PSR ¶ 37. The defendant has lived in Arizona since August of 2015. PSR ¶¶ 40-41.

The defendant appears to be in good physical health; his only ongoing medical concern is high cholesterol. PSR ¶ 43. He has no reported history of mental or emotional health issues. PSR ¶ 44. He has no history of substance abuse. PSR ¶ 45. He has no criminal convictions, resulting in a Criminal History Category of I. PSR ¶¶ 26-29.

The defendant was educated in the United Kingdom, where he earned a Bachelor's Degree in 1981. PSR ¶¶ 46-47. Since his first arrival in the United States in 1997, the defendant has worked in the tobacco industry; he was employed by NTC from 2002 to 2014, when he left to create and operate his own company, TNV Ventures. PSR ¶¶ 48-50. As previously noted, the defendant worked on CITMA-related matters during both his time at NTC and while operating TNV Ventures. PSR ¶ 10. The defendant was not paid by CITMA for his services, however; NTC reimbursed him for all CITMA-related activities and travel expenses. *Id.*[2]

### III. Need to Promote Respect for the Law and Afford Adequate Deterrence

A guideline sentence is appropriate in light of the need to promote respect for the law and to afford adequate deterrence of criminal conduct.

General deterrence is of real importance in this case. CITMA's financial management set-up between 2009 and 2016 has its counterparts across the organizational spectrum, from charities to trade associations to civic groups: Hand the checkbook to an employee or officer, and ask them to handle the organization's financial obligations. The defendant succumbed to the temptation engendered by his control over his organization's money – other people's money. A guideline sentence sends the message to other individuals in the defendant's (former) position who may be

---

[2] The government notes that it is to the defendant's credit that his decision to accept responsibility came rapidly on the heels of his receipt of a target letter and subsequent meeting with investigators. The government's recommendation of a sentence at the low end of the advisory guideline range reflects and incorporates the defendant's quick acceptance of responsibility and subsequent cooperative posture with the U.S. Attorney's Office.

5

similarly tempted to abuse their ready access to their business's or organization's bank account that such criminal conduct cannot and will not be tolerated.

Accordingly, a sentence of 27 months, within the guideline range, would ensure that federal laws are respected and would deter both the defendant and other individuals similarly situated from engaging in the same deliberate, illegal conduct.

## CONCLUSION

For the reasons stated above, the United States submits that a guideline sentence of 27 months is sufficient but not greater than necessary to accomplish the sentencing factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Dana J. Boente
United States Attorney

/s/
Thomas A. Garnett
Virginia Bar No. 86054
Assistant United States Attorney
Attorney for the United States
U.S. Attorney's Office
919 E. Main Street, Suite 1900
Richmond, Virginia 23219
Phone: 804-819-5400
Fax:     804-771-2316
Email: Thomas.A.Garnett@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Thomas T. Cullen
Woods Rogers PLC
10 S. Jefferson St.
P.O. Box 14125
Roanoke, VA 24038-4125
Phone: (540) 983-7602
Email: TCullen@woodsrogers.com

I also hereby certify that on December 27, 2017, I emailed a true and accurate copy to the following:

Diane C. Moczydlowski
United States Probation Officer
Suite 1150
701 East Broad Street
Richmond, Virginia 23219

                                                        /s/
Thomas A. Garnett
Virginia Bar No. 86054
Assistant United States Attorney
Attorney for the United States
U.S. Attorney's Office
919 E. Main Street, Suite 1900
Richmond, Virginia 23219
Phone: 804-819-5400
Fax: 804-771-2316
Email: Thomas.A.Garnett@usdoj.gov